IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ELVIR O. OSMANAGIC,<br><br>        Petitioner,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br>Administration,<br><br>        Respondent. | Case No. CV 08-260-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## Introduction

Currently pending before the Court for its consideration is the Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed by Petitioner Elvir O. Osmanagic ("Petitioner") on June 24, 2008. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"). For the reasons that follow, the Court remands the decision of the Commissioner.

### I.
### Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on February 27, 2006, alleging onset of disability as of February 27, 2006, due

**Memorandum Decision and Order - Page 1**

to epilepsy. Petitioner's application was denied initially and also upon reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Lloyd E. Hartford held a hearing on January 11, 2008, taking testimony from Petitioner. (AR 19-44.[1]) Although James J. Grissom, a vocational expert, also appeared at the hearing, his testimony was deemed unnecessary. ALJ Hartford issued a decision finding Petitioner not disabled on March 3, 2008. (AR 7-18.)

Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner. (AR 2-5.) Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 21 years of age. He has a high school education and no past relevant work.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of February 27, 2006. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's epilepsy "severe" within the meaning of the Regulations. Step three asks

---

[1] The Administrative Record was filed as Docket No. 10, 10-1, 10-2, 10-3 and 10-4. All citations to the Administrative Record will be to the actual page of the record rather than the page number as it was filed with the Court.

**Memorandum Decision and Order - Page 2**

whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that Petitioner has no past relevant work but that Petitioner has the residual functional capacity to perform the full range of light work at all exertional levels, except that he cannot work around unprotected elevations or near dangerous moving machinery.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. At step five, the ALJ determined that jobs exist in significant numbers in the national economy that Petitioner can perform.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work

experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment

is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at step three by not finding that his epilepsy meets or equals the criteria of Listing 11.02 or 11.03. Specifically, Petitioner contends that the ALJ improperly assessed his credibility, as well as the credibility of his family members who provided lay testimony and descriptions of Petitioner's epilepsy disorder. Further, Petitioner contends that ALJ Hartford improperly rejected the conclusions of his treating physician Dr. Green, who opined that Petitioner's epilepsy meets the requirements of Listing 11.02 for convulsive epilepsy. The Court will address each argument in turn.

**A.      Listing Requirements**

Epilepsy is a listed impairment evaluated according to the type, frequency, duration, and sequelae of seizures. There are two epilepsy listings in Appendix 1, Listing 11.02 for convulsive seizures and Listing 11.03 for non-convulsive seizures. Petitioner is arguing that the ALJ erred by finding that he did not meet the requirements under both sections. Specifically, Listing 11.02 requires:

> Epilepsy - convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month, in spite of at least three months of prescribed treatment. With:
>       A. Daytime episodes (loss of consciousness and convulsive seizures) or

> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

20 C.F.R. Pt. 404 Subpt. P, App 1, Listing 11.02.

Listing 11.03 requires:

> Epilepsy-nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.03. A claimant's impairment does not meet the epilepsy listing unless it "persists despite the fact that the individual is following prescribed anticonvulsive treatment." 20 C.F.R. Pt. 202, Subpt. P, App. 1, 11.00A. An ALJ can ordinarily determine whether a claimant is adhering to his or her prescribed therapy from objective clinical findings in the treating physicians report including blood levels of prescribed anticonvulsive medications. *Id*.

In the instant case, the ALJ determined that the record as a whole did not support the finding that the frequency of Petitioner's convulsive and non-convulsive seizures met the specific requirements of 11.02 and 11.03. In making this determination, the ALJ discredited Petitioner, lay testimony provided by Petitioner's family regarding Petitioner's typical seizure pattern and the frequency of Petitioner's seizures, and discredited the opinion of treating physician Dr. Lawrence Green.

### 1. Petitioner's Credibility

Petitioner's testimony indicated that he was suffering several seizures a month but that he could not remember them after they happen. Petitioner further testified that, because he does

not remember the seizures, the information regarding how many seizures he has came from his mom who can hear them occurring. (AR 27.) The ALJ discredited Petitioner's testimony with respect to the number and severity of the seizures he experiences for two reasons: first, Petitioner admitted to not always being truthful with his treating physician or with Dr. Stephen Asher, a consultative examiner; and second, because Petitioner's testimony was inconsistent with other records regarding the frequency of his seizures. The Court will address each reason in turn.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d

**Memorandum Decision and Order - Page 7**

957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Here, ALJ Hartford was correct when finding that Petitioner admitted to under-reporting the number of seizures he experienced to both his treating physician Dr. Green and to a consulting physician Dr. Asher because he wanted to get his driver's license. (AR 26.) He had previously been informed by Dr. Green that he could only obtain his driver's license if he was seizure free for a month and by Dr. David Bettis, his previous treating physician, that he could only obtain his drivers license if he was seizure free for six months. (AR 26, 218, 219.) Thus, the ALJ correctly found Petitioner not credible; however, the ALJ erred in his conclusion regarding the implication of this testimony by Petitioner. Instead of indicating that Petitioner was exaggerating his symptoms in an attempt to qualify for disability benefits, Petitioner's testimony indicates that he was making an effort to appear less disabled than he actually is. If

**Memorandum Decision and Order - Page 8**

anything, Petitioner's testimony implies that Petitioner was suffering more seizures than he was willing to report, lending credibility to the conclusion that Petitioner was suffering at least one seizure per month. Thus, Petitioner's admitted under-reporting does not support the ALJ's conclusion that Petitioner was experiencing less than one seizure a month. Further, the Court finds that this testimony undermines the ALJ's reliance on the opinion of Dr. Stephen Asher, an examining physician, which was based upon Petitioner's report to Dr. Asher that he had been seizure free for six months. (AR 184-185.)

ALJ Hartford further found that Petitioner's testimony regarding the frequency of his seizures was vague and inconsistent. Specifically, the ALJ pointed to Petitioner's disability report, indicating he was suffering from as many as four seizures per day, Dr. Green's note that Petitioner reported having four to six seizures per month, a follow up seizure questionnaire completed by Petitioner indicating that he was suffering from four to five seizures per day, Petitioner's testimony that he had more than one seizure per month but that he did not know the specific number as his mother keeps track of them, and Petitioner's testimony that he would generally have eight to nine seizures per month. (AR 5.)

Taken in context of Petitioner's testimony that he does not remember the seizures and that his mom kept track of them, it is not surprising that the number of seizures listed on different reports varies.[2] Additionally, as argued in Petitioner's brief, the language barrier between Petitioner, Petitioner's family and Petitioner's physicians as well as the fact that different family members accompanied Petitioner to his appointments also could have impacted the quality of

---

[2] Inconsistencies in Dr. Green's record are also not suprising as Dr. Green noted that Petitioner failed to bring his seizure calendar to appointments with Dr. Green. (AR 205.)

**Memorandum Decision and Order - Page 9**

communication with respect to the frequency of seizures.[3]  Further, even if these numbers are inconsistent, they consistently demonstrate that Petitioner was suffering from at least one seizure per month, meeting the requirements for Listing 11.02.  Therefore the Court finds the ALJ was correct in discrediting Petitioner based on his testimony that he lied to his examining and treating physician; however, the ALJ's conclusions with respect to the implications of this testimony constitute error.

### 2. Testimony of Petitioner's Family Members

Descriptions of Petitioner's seizures, as well as an Affidavit and calendar of seizure activity for 2005, 2006, and 2007, was provided to ALJ Hartford by Petitioner's mother, Hasibe Osmanagic, and father, Osman Osmanagic. (AR 130-168.) Petitioner's sister, Senada Osmanagic, also provided a description of one of Petitioner's seizures. (AR 169.) The ALJ discredited the calendar and the descriptions provided by Petitioner's family members because: 1) the calendar was inconsistent with Dr. Green's notes; and 2) the descriptions provided by Petitioner's mother and sister were not sufficiently detailed. (AR 4.)

To determine whether a Petitioner meets the listing requirements, a detailed description of a typical seizure pattern including all associated phenomena is essential.  Due to the nature of the impairment, a complete description of a seizure cannot be obtained from the claimant.  If professional observation is not available, it is essential that a description be obtained from a third party (i.e. family member).  20 C.F.R. 404, Subpt. P, App. 1, Listing 11.00A; Social Security Ruling 87-6.

Here, both Petitioner's mother and sister described Petitioner's seizures.  These

---

[3] Petitioner and Petitioner's family are Bosnian.

**Memorandum Decision and Order - Page 10**

descriptions are consistent. Senada Osmanagic wrote,

> We were watching television and suddenly I heard struggling, screams and hisses. He got up, his body was shaking, and he swung back and forth and squeezed his hands into fists. While standing, he was lifting his shoulders, grasping for air as if someone was choking him... the seizures last no longer than few minutes, once its over, I try to have a conversation about the seizures but Elvir has no memory of the seizures that occurs. (AR 169.)

Petitioner's mother's description of his seizures is consistent, noting that as Petitioner has gotten older, his seizures have gotten longer and stronger. She further noted that, after observing his seizures, she believes they have similar posture and behavior. She described them as follows:

> If lying on the bed the seizure would force him to sit up and his eyes would open wide and turn red. he shakes and swings back and forth squeezing his hands into fists. Most of the time, he manages to get up and stand. while standing, he will lean back and forth while lifting his shoulders. During seizures, he makes struggling screams and hisses and grinds his teeth. Most of the time, he loses control and consciousness. As it ends, we have noticed recently that he grasps [sic] for air as if someone is choking him. the seizures last no longer than two minutes. (AR 130.)

Finally, Petitioner's mother and father signed an Affidavit indicating that Petitioner has experienced more than one seizure per month involving convulsions and some loss of consciousness. (AR 132.)

      The ALJ concluded that these descriptions of Petitioner's seizures were not sufficient to meet the Listing Requirements, as they did not specifically contain descriptions of aura, tongue bites, sphincter control, or injuries associated with the attacks as listed in Listing 11.00A. The Court disagrees. First, expecting lay witnesses to specifically discuss medical requirements in their descriptions is improper and unrealistic. Second, the descriptions provided by Petitioner's family's may include a description of these symptoms without using the technical terms. It is safe to assume that, if not mentioned, Petitioner may not suffer from certain of these symptoms

**Memorandum Decision and Order - Page 11**

listed in Listing 11.00A, as not all seizure patterns are the same or involve the same type of behavior.  Finally, the descriptions provided by Petitioner's mother and sister are consistent with Dr. Green's conclusion that Petitioner suffers from complex partial seizures.[4]  Based on the foregoing, the Court finds that the ALJ erred in discrediting the descriptions of Petitioner's typical seizure patterns by his family members.  Instead, the Court concludes that the descriptions adequately satisfied the requirement for a detailed description of a typical seizure pattern with all associated phenomena.

With respect to the ALJ's rejection of the Affidavit and calendar provided by Petitioner's parents, the Court notes that, despite certain inconsistencies, the calendar does substantiate, that Petitioner suffers more than one convulsive seizure per month and that he has suffered at least more than one seizure per month since September 2005. (AR 131-168.)[5]  Further, because Petitioner did not take the seizure calendar to all of his meetings with Dr. Green these inconsistencies would be expected.  Therefore, the Court finds that ALJ Hartford's rejection of the testimony and observations of Petitioner's family members based on these perceived inconsistencies, constitutes error.

### 3. Evaluation of Petitioner's Treating Physician

Petitioner contends that the ALJ improperly rejected the conclusions of Dr. Green,

---

[4] A complex partial seizure is "a type of partial seizure associated with disease of the temporal lobe and characterized by varying degrees of impairment of consciousness; the patient performs automatisms and is later amnesic for them.  An attack is often precluded by a hallucinatory aura, most often visual or auditory but sometimes involving the other senses." *Mendoza v. Barnhart*, 436 F.Supp.2d 1110, n.2 (C.D. Cal 2006) *citing* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1619 (29th ed. 2000).

[5] The court notes that there was no recorded seizure activity in June and July 2005, however, between September 2005 and December 2007 Petitioner has suffered between 1 and 13 seizures per month with up to four on the same day. (AR 133-168.)

**Memorandum Decision and Order - Page 12**

Petitioner's treating neurologist since August 2004. Dr. Green diagnosed Petitioner with intractable complex partial seizures[6] opining that Petitioner meets listing 11.02 as his seizures occur more than once a month, despite compliance with his anticonvulsive medications. Dr. Green also signed an Affidavit to that effect.[7] (AR 202-204.)[8] Based on the following discussion, the Court concludes that the ALJ erred in rejecting Dr. Green's opinion.

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983). In turn, an examining physician's opinion

---

[6] A complex partial seizure is "a type of partial seizure associated with disease of the temporal lobe and characterized by varying degrees of impairment of consciousness; the patient performs automatisms and is later amnesic for them. An attack is often precluded by a hallucinatory aura, most often visual or auditory but sometimes involving the other senses." *Mendoza v. Barnhart*, 436 F.Supp.2d 1110, n.2 (C.D. Cal 2006) *citing* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1619 (29th ed. 2000).

[7] Dr. Green signed an Acknowledgment on December 4, 2007 indicating that his Affidavit signed in 2006 was still applicable to Petitioner. (AR 129.)

[8] The ALJ did not discuss Petitioner's compliance with his anticonvulsive medications for three months as required by the Listing and his compliance is documented by Dr. Green's treatment notes and blood level records. (AR 198, 210.)

**Memorandum Decision and Order - Page 13**

is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a claimant's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

ALJ Hartford provided several reasons for discrediting Dr. Green's conclusions: 1) Dr. Green had not witnessed a seizure by Petitioner; 2) Dr. Green relied heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept them as true; 3) Dr. Green's opinion is inconsistent with the opinion of the examining physician, Dr. Asher; and 4) Dr. Green's opinion is inconsistent with the opinion of Dr. David Bettis, Petitioner's pediatric neurologist. The Court will address each argument in turn.

First, the Court finds the ALJ erred by discrediting Dr. Green's opinion on the grounds that Dr. Green might not have witnessed one of Petitioner's seizures. The regulations clearly provide for the situation where the treating physician does not witness a seizure by placing emphasis on obtaining statements from others who have witnessed a seizure. Thus, this was an

**Memorandum Decision and Order - Page 14**

inadequate reason to reject Dr. Green's opinion.  Additionally, the Court notes that Dr. Green did describe Petitioner's seizures as "complex partial," which is a generally accepted classification of seizure type.

Second, the Court finds that Dr. Green's reliance on Petitioner's subjective complaints also was an insufficient basis for rejecting Dr. Green's opinion.  As discussed above, the Court finds that the implications of ALJ Hartford's credibility assessment of Petitioner was in error.  Further, the ALJ's conclusion that Dr. Green took Petitioner's complaints at face value is also error.  In his treatment notes, Dr. Green specifically mentioned that he did not believe Petitioner's statements to be completely accurate and he suspected some under-reporting. (AR 200.) The length and amount of this under-reporting is unclear; however, it is clear that Petitioner's testimony in this regard would only lend credibility to Dr. Green's conclusion that Petitioner was experiencing more than one complex partial seizure each month, meeting the requirements of Listing 11.02.  Therefore, the Court finds that the ALJ erred by discrediting Dr. Green's opinion based on his analysis of Petitioner's credibility issues.

Third, the ALJ discredited Dr. Green's opinion because it was inconsistent with Dr. Asher's opinion, which the ALJ found was more consistent with the record as a whole.  Dr. Asher examined Petitioner once on April 25, 2006.  (AR 184-185.) He concluded that Petitioner had good control over his seizures, because Petitioner reported to Dr. Asher that had been seizure free for six months. (AR 184-185.) As noted above, Petitioner testified that he misrepresented the number of seizures he actually had experienced to Dr. Asher in order to try to get a driver's license.  Therefore, the Court finds that Dr. Asher's conclusions, based on this inaccurate report by the Petitioner, are equally inaccurate and the ALJ's conclusion that Dr. Asher's opinion is more credible than Dr. Green's opinion is not supported by substantial

**Memorandum Decision and Order - Page 15**

evidence.

Finally, the ALJ discredited Dr. Green's opinion as inconsistent with the findings of Petitioner's prior treating physician, Dr. David Bettis.  Dr. Bettis' notes from 2004 indicate that Petitioner was having breakthrough seizures, despite his earlier notes indicating that Petitioner's breakthrough seizures were improving. (AR 217, 218.)  Instead, this is consistent with Dr. Green's conclusion that Petitioner was having breakthrough seizures, even though he was compliant with his medications.  Further, both Petitioner and Petitioner's mother noted that Petitioner's seizures had grown worse over time.[9] (AR 130.)  Thus, the Court finds that the ALJ erred in his determination that Dr. Green's opinion should be discredited based on its conflict with Dr. Bettis' treatment notes.

Based on the foregoing, the Court finds that the ALJ's discrediting of Dr. Green's opinion was not based on substantial evidence and was legal error.

## B.      Remand for Award of Benefits

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004) *citing Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000).   Conversely where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *Id. citing  Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if: 1)

---

[9] The Court also notes that Dr. Bettis told Petitioner he could begin driving if he was seizure free for six months, indicating that perhaps Petitioner's under-reporting may have started under Dr. Bettis' care. (AR 218, 219.)

**Memorandum Decision and Order - Page 16**

the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues that must be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id. citing Harman*, 211 F.3d at 1178.

In this case the Court finds that the *Harman* test is satisfied. The ALJ did not provide legally sufficient reasons for rejecting the evidence provided through Petitioner's family members and Dr. Green's opinion, as discussed above. Additionally, although the ALJ correctly concluded that Petitioner's testimony was not credible, he erred by drawing inaccurate conclusions from that testimony as described above. Thus, the first criteria of *Harman* is satisfied.

With regard to the second and third criteria of the *Harman* test, it is clear there are no other issues that must be resolved, and if the ALJ had drawn the proper conclusions and properly credited the testimony of Petitioner's family members and Dr. Green, he would have concluded that Petitioner met Listing 11.02. The only issue was whether Petitioner suffered a sufficient number of convulsive seizures per month to meet Listing 11.02. It is clear from the record and the discussion above that, if the ALJ had drawn the correct conclusions from Petitioner's testimony, Dr. Green's opinion, and the information provided by Petitioner's family members, the ALJ would have concluded that Petitioner suffered from at least one convulsive seizure per month (despite the discrepancies in the record regarding the exact number of seizures experienced per day or per month by Petitioner). Additionally, the record demonstrates, but the ALJ did not discuss, that Petitioner experienced these seizures while he was compliant with his medication regimen as demonstrated by the blood levels drawn and incorporated into the record by Dr. Green. (AR 198, 210.) Based on the foregoing, no further proceedings are required to

**Memorandum Decision and Order - Page 17**

determine that, if the evidence is properly credited and analyzed, Petitioner meets Listing 11.02 for convulsive epilepsy and benefits should be awarded.

## V.
## Conclusion

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence and is the product of legal error.  Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be remanded for an immediate award of benefits.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **Remanded** for an immediate award of benefits and that the Petition for Review be **Granted**.



DATED: September 30, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge